Carl B. SEBRING, Bank Commissioner of the State of Oklahoma and Chairman of the Banking Board of the State of Oklahoma, the Banking Board of the State of Oklahoma, Capitol Hill State Bank & Trust Company and Oklahoma National Bank of Oklahoma City, Plaintiffs in Error,

v.

George Sam CAPORAL, Thomas A. Bamberger, R. L. Eoff, George Farha, W. P. Jeter, M.D., Dave Muir, J. Eldon Peek, George Priddy, M.D., Tom Thomas, Jim Thomas and Jim Uhles, Defendants in Error.

No. 42344.

Supreme Court of Oklahoma.

Jan. 28, 1969.

Rehearing Denied April 22, 1969.

G. T. Blankenship, Atty. Gen., of Oklahoma, W. J. Monroe, First Asst. Atty. Gen., of Oklahoma, for plaintiffs in error Carl B. Sebring, Bank Commissioner & Chairman of the Banking Board of the State of Oklahoma, and the Banking Board of the State of Oklahoma.

Fellers, Snider, Baggett & McLane, by Bryce A. Baggett, Oklahoma City, for Capitol Hill State Bank & Trust Co.

Merson, Campbell & Merson, by Herman Merson, Oklahoma City, for Oklahoma National Bank of Oklahoma City.

John W. Young, Sapulpa, for defendants in error.

WILLIAMS, Justice.

Plaintiffs in error, Carl S. Sebring, Bank Commissioner of the State of Oklahoma and Chairman of the Banking Board of the State of Oklahoma, the Banking Board of the State of Oklahoma ("Banking Board"), Capitol Hill State Bank & Trust Company, and Oklahoma National Bank of Oklahoma City, herein seek our review of a judgment of the trial court reversing a decision of the Banking Board which denied an application of defendants in error seeking a charter for a proposed bank to be located in Oklahoma City. On appeal, the parties will be referred to as they appeared in the lower court, i. e., plaintiffs in error will be referred to as respondents and defendants in error will be referred to as petitioners.

Petitioners' formal application for a bank charter filed with the Banking Board reflects that the proposed bank is to be known as the Shields Avenue Bank and is to be located at 3100 Shields Avenue, Oklahoma City, which is in an area referred to as "Southeast Oklahoma City" or "Southeast Capitol Hill." At the time of opening, the capital structure of the proposed bank is to be as follows:

| | |
|---|---|
| Common Stock | $150,000 |
| Surplus | 100,000 |
| Undivided Profits | 50,000 |

The common stock is to consist of 15,000 shares, par value of $10.00 per share, to be sold at $20.00 per share.

Subsequent to the filing of the application seeking a bank charter and pursuant to instructions of the State Bank Commissioner, investigators of the Banking Board conducted an investigation of the proposed bank and submitted a written report to the Banking Board. This written report covered the following questions, all of which are required by 6 O.S.1961, § 55, to be found favorably for petitioners if such application for a bank charter is to be approved: the financial standing and character of the incorporators; the character, qualifications and experience of the officers; the adequacy of the capital structure of the proposed bank; the bank's future earnings prospects; and, the convenience and needs of the community in regard to the establishment of the proposed bank. This report by the investigators made no recommendation to the Banking Board as to the granting or denying of a charter for the proposed Shields Avenue Bank.

Subsequent to the filing of the above written report, the Banking Board held a formal hearing at which time evidence was submitted relative to the granting or denying of a charter for the proposed bank. Thereafter, the Banking Board entered its order denying the application of petitioners for a banking charter. In its written findings of fact and conclusions of law, the Banking Board found, inter alia, that three of the questions required by 6 O.S.1961, § 55, supra, to be found favorably for petitioners could not be so determined. These unfavorable determinations were that the capital structure of the proposed bank, although meeting the minimum statutory standards, would be inadequate for the needs of a bank in a metropolitan area; that "the future earning possibilities of the proposed bank are unfavorable;" and, "(T)hat there is no public necessity for an additional banking institution in the 3100 block of South Shields Avenue in the City of Oklahoma City, Oklahoma County, Oklahoma."

On appeal, the court below, after its examination of the record of the proceedings had before the Banking Board, vacated the decision of the Banking Board and ordered it to grant the bank charter sought by petitioners. From this latter decision, respondents bring the appeal herein.

■ It should be noted that the application for the banking charter was filed prior

to the effective date of the 1965 Banking Code including 6 O.S.1965 Supp. § 207, subd. E and thus the appeal from the decision of the Banking Board was properly lodged in the district court below.

Although the lower court's judgment stated additional grounds for reversal, it is our opinion that the determinative issue on appeal is whether the lower court erred in vacating the Banking Board's decision and ordering charter granted on the ground that such was " * * * clearly erroneous in view of the reliable, material, probative and substantial competent evidence." In applicable part, § 322, 75 O.S.1968 Supp. provides:

"(1) In any proceeding for the review of an agency order, the Supreme Court or the District or Superior Court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

* * * * * *

(e) clearly erroneous in view of the reliable, probative and substantial competent evidence, as defined in Section 10 of this Act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact."

In the hearing before the Banking Board, petitioners submitted testimony and various exhibits in support of their application seeking a charter for the proposed bank. Mr. George Sam Caporal, one of the petitioners herein and chairman of the board designate of the proposed bank, testified that he was a long-time resident of the Capitol Hill area of Oklahoma City; that he personally had contacted numerous businessmen and residents of the proposed

bank's service area and that the response to the new bank was enthusiastic; and, that the proposed bank's location on South Shields Avenue, a heavily travelled Oklahoma City street, would provide easy access to the bank, including its planned drive-in facilities. Mr. Caporal also testified that the banking facilities would be owned by a separate corporation, although the latter's capital stock would be held by the same individuals holding stock in the banking corporation.

One of the exhibits submitted to the Banking Board was a study of the feasibility of the proposed bank by the Bureau of Public Research at the University of Oklahoma. This study was confined to the area considered by petitioners to be the potential service area of the proposed bank. This service area was defined as rectangular in shape, its boundaries being the North Canadian River on the north, Southeast 73rd Street on the south; Broadway Avenue on the west; and, Bryant Avenue on the east. This potential service area comprises approximately fifteen square miles. Ahmed Mandour, research assistant at the Bureau of Research, and whose immediate responsibility it was to prepare the feasibility report of the proposed bank, testified that in the preparation of the report, 111 persons (both residents and businessmen of the area) were interviewed to obtain information relative to the average income of the area, the banking habits of the area's residents, and the question of whether the proposed bank would be patronized. In addition, other data was obtained to ascertain the commercial, industrial and residential character of the area and its estimated population growth. The report states that the bank's potential service area had a population of approximately 26,000 residents in 1960 and of approximately 35,000 in 1965, and forecasts that the area would have a population of 50,000 in 1975. From the available data, the report estimates the amount of deposits and loans that could be expected by the proposed bank in its first five years of operation, and further estimates that the bank will have

a net loss before taxes of approximately $12,000 in its first year of operation, and net incomes of approximately $3,000 in second year of operation and of approximately $33,000 in its third year.

The report indicated that approximately 25% of the residents of the area did not patronize any bank, and that of those that did use the services of a bank, approximately 50% patronized a bank outside the Capitol Hill area.

Mr. Ahmed further testified that the projections stated in the report were minimum figures and were based on commonly used sampling techniques which have proven to be 95% accurate.

In its summary and conclusions,. the report prepared by the Bureau of Research stated that the proposed bank is economically feasible. The report further stated that the area's growth trend was upward; that the residents and businesses located in the bank's service area indicated their willingness to patronize the bank; that the public's desire for fast service would be provided by the bank's facilities; and, the bank, " * * * will reach a profitable stage in the near future through the expected growth of its business."

Mr. Jim Uhles, one of the petitioners herein and vice-president and cashier designate of the proposed bank, testified that he had five years experience in the banking business in the Oklahoma City area, one year of which was as vice-president and cashier of a suburban bank during its first year of operation. He further testified that from projections he had prepared from call statements of banks in the metropolitan Oklahoma City area the proposed bank should have a net loss of approximately $8500 in its first year of operation, and net incomes of approximately $13,000 and $28,000 in its second and third years of operation. On cross-examination, he stated that the suburban bank with which he was formerly associated exceeded during its first several years his projections of estimated deposits with the proposed bank, and

that in his opinion the service area of the proposed bank would generate more business than such suburban bank.

Petitioners also introduced a number of exhibits tending to establish the need and desirability of the granting of the proposed bank's charter.

Officers of several banks protesting petitioners' application testified to the effect that the Capitol Hill area already had a sufficient number of banks and that the proposed bank could not expect to obtain as customers a number of the residents or of the commercial and industrial establishments in the potential service area.

In our opinion, the record submitted on appeal is almost totally void of any evidence controverting the testimony and exhibits introduced by petitioners which tended to establish that the capital structure of the proposed bank was adequate, that the future earnings of such bank were favorable, and that there is a public necessity for the proposed bank.

■ Respondents contend that the Banking Board may rely on its own knowledge in determining whether to grant or deny petitioners' application. However, 75 O.S.1968 Supp. § 310(4) provides:

"Notice may be taken of judicially cognizable facts. In addition, notice may be taken of generally recognized technical or scientific facts within the agency's specialized knowledge. Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material noticed, including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed. The agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence."

The record herein does not reflect that the Banking Board took notice of any.material not presented at the hearing before it. Although the Banking Board, as provided in

the above quoted statutory language, may use its specialized knowledge in the evaluation of the evidence, it is our opinion that the full import of the provisions of § 310 (4), supra, would require that there be some evidence submitted or officially noticed on which this specialized knowledge could operate or which would indicate the nature of this specialized knowledge. As we noted above, the record herein is almost totally void of any evidence supporting the conclusions of the Banking Board of which petitioners complain.

Respondents also cite Oklahoma State Banking Board v. Hicks, Okl., 412 P.2d 129, to support their position on appeal. In *Hicks,* we reversed a judgment of the district court which had vacated a decision of the Banking Board denying a charter for a proposed bank in the town of Catoosa, Oklahoma. In our view, *Hicks* is distinguishable from the case at bar. In our opinion therein we noted that the possibility of the proposed bank depended upon the hoped for population and economic growth to be caused by the completion of the Arkansas Navigational Project. We noted therein that no evidence had been submitted relative to the effect of the completion of that project. In the case herein, there is ample evidence of the population and economic growth *that has already* occurred in the proposed bank's potential service area.

In our opinion the decision of the Banking Board herein is clearly erroneous in view of the reliable, material, probative, and competent evidence as shown by the record submitted on appeal.

The judgment of the trial court is affirmed.

IRWIN, C. J., BERRY, V. C. J., and BLACKBIRD, HODGES and McINERNEY, JJ., concur.

DAVISON, JACKSON and LAVENDER, JJ., concur.