Charles A. VOSE et al., Plaintiffs in Error,

v.

The BANKING BOARD of the State of Oklahoma et al., Defendants in Error.

GUARANTY BANK & TRUST COMPANY et al., Plaintiffs in Error,

v.

The BANKING BOARD of the State of Oklahoma et al., Defendants in Error.

Nos. 44340, 44342.

Supreme Court of Oklahoma.

March 9, 1971.

Rehearing Denied April 20, 1971.

Fowler, Rucks, Baker, Jopling, Gramlich & Mee by R. C. Jopling, Jr., Oklahoma City, for plaintiffs in error, Charles A. Vose and others.

John M. Sheehan, and John L. Belt, Oklahoma City, for defendants in error, The Banking Board of the State of Oklahoma and others, and plaintiffs in error, The Guaranty Bank & Trust Co. and others.

Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick by William G. Paul, Oklahoma City, for defendants in error, The Banking Board of the State of Oklahoma and others.

McINERNEY, Justice.

The proposed Oakwood State Bank filed an application for a charter on December 23, 1969. The Banking Board held a hearing on February 19, 1970 and denied the application on that date. The proposed Sequoyah State Bank filed its application on January 12, 1970. The Banking Board held a hearing on February 24, 1970 and granted a charter on February 26, 1970. The proposed locations are about a mile and a quarter apart on Northwest Tenth Street in Oklahoma City and would serve virtually the same prospective trade area. In both cases, the three nearest es-

tablished banks appeared as protestants. On June 1, 1970, the Court of Bank Review affirmed both orders of the Banking Board. Oakwood appeals from the order of the Banking Board affirming the denial of its charter (No. 44,340); the protestants appeal from the order affirming the granting of a charter to Sequoyah (No. 44,342). We consolidate the appeals for decision after oral argument, due to the proximity in time of the filing of the applications affecting substantially the same trade area.

We note that both applications were pending before a decision on either was reached. The "public need and advantage," 6 O.S.Supp. 1965, § 306, subd. F(1), being promoted by the establishment of the proposed banks was the central issue in both cases. In its orders, the Banking Board found against Oakwood and for Sequoyah on this issue on the basis of the evidence offered in each individual case, independently of the other's application, and without considering the total evidence cumulatively of both applicants. At oral argument, Oakwood suggested that the Court of Bank Review should have taken judicial notice of the record supporting Sequoyah's application, while the protestants argued that the denial of Oakwood's application was conclusive of the central question of "public need and advantage" in both cases and should dictate a similar denial of Sequoyah's application. Both arguments overlook the statutory prerequisites to issuance of a charter and the purpose of judicial review.

■■■ The issuance of a certificate to engage in the banking business rests solely in the discretion of the Banking Board. 6 O.S.Supp. 1965, § 301. The discretion thus vested must be based on satisfactory proof of the statutory requirements provided in 6 O.S.Supp. 1965, § 306, subd. F. Each applicant has the opportunity of presenting its application and the burden of supporting by evidence the feasibility of the certificate sought. The first applicant cannot bolster its presentation by a competing applicant's proof, or protes-

tants preclude the success of a second applicant solely upon failure of the first application. An application for a bank charter should be heard on its individual merits. [Although where, as here, mutually exclusive applications are simultaneously pending, the Banking Board may, when possible within the statutory time limits, defer final action until the merits of each application are heard in order to comply with the spirit of § 306, subd. D, supra].

■■■ On appeal to the Court of Bank Review, the Court may affirm or it may reverse on any of four statutory grounds. 6 O.S.Supp. 1965, § 207, subd. C. The apparent conflicting conclusions of the Banking Board in these two cases on the issue of the public need and advantage is explained in the opinions of the Court of Bank Review by reliance on the individual records in each case when measured by the function of the Banking Board. The Court of Bank Review is not a substitute for the Banking Board in the issuance of certificates to engage in the banking business; it is a judicial reviewing body limited by statute to the "substantial evidence" rule, which is defined in Yellow Transit Co. v. State, 198 Okl. 229, 178 P.2d 83 (1947). Moreover, this judicial review contemplates an appraisement of the individual record. Otherwise, the success or failure of a competing applicant before the Banking Board would deprive another applicant of a judicial review on the merits of its individual case.

After a hearing before the Banking Board and an appeal to the Court of Bank Review, 6 O.S.Supp. 1965, § 207, subd. D, since amended, provides that the decision of the Court of Bank Review may be appealed to the Supreme Court. At this point, the posture of the parties becomes analogous to that encountered in N.L.R.B. v. Pittsburg Steamship Co., 340 U.S. 498, 502, 71 S.Ct. 453, 456, 95 L.Ed. 479 (1951), wherein the United States Supreme Court stated:

"Were we called upon to pass on the Board's conclusions in the first instance

or to make an independent review of the review by the Court of Appeals, we might well support the Board's conclusion and reject that of the court below. But Congress has charged the Courts of Appeals and not this Court with the normal and primary responsibility for granting or denying enforcement of Labor Board orders. * * *

"This is not the place to review a conflict of evidence nor to reverse a Court of Appeals because were we in its place we would find the record tilting one way rather than the other, though fair-minded judges could find it tilting either way."

Accord, Universal Camera Corp. v. N.L. R.B., 340 U.S. 474, 490–491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951):

"Our power to review the correctness of application of the present standard ought seldom to be called into action. Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals. This Court will intervene only in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied."

See also 4 Davis, Administrative Law Treatise, § 29.04.

■ In Oklahoma, the Legislature has similarly charged the Court of Bank Review and not this Court with the normal and primary responsibility of reviewing Banking Board orders. Whether on the record as a whole there is substantial evidence to support the findings of the Banking Board is a question the Legislature has placed in the keeping of the Court of Bank Review. We hold that the sound policy quoted above properly defines the scope of this Court's review in appeals taken from the Court of Bank Review.

Having established the correct standard for review by this Court, we now turn to the examination of the two individual records before us. In reviewing first the Oakwood appeal (No. 44,340), we find that its case before the Board comprised two main facets: the introduction of the economic study of the proposed area conducted by Mr. K (and his testimony in expansion thereon); and the testimony of the applicant's prospective organizers. Since the testimony of the applicant's prospective organizers consisted chiefly of their own declarations regarding their qualifications, and prospects for success in the venture (points not seriously in dispute), we might move on to the survey and testimony of Mr. K. These latter adequately recited the necessary favorable conclusions, and included pages of statistical data. It was not, however, these conclusions and tabulations, but rather the basis therefor, that the Board found unpersuasive (and properly so, the Court of Review concluded).

Mr. K himself appears to have been in the mortgage loan area with a local bank for a number of years, and to have had some training in real estate appraisement, and home construction. He also has handled investments in real estate property and has made several other economic studies for other parties (whom he did not name). He did not testify as to any background or qualifications in economics or statistics.

In testifying in support of his study, Mr. K declared that it was for the two-mile circle referred to in the application; however, upon examining the study itself, it clearly covered a much larger area, known as the "OCART District 71"—an area twice as large as the nominal two mile circle, and clearly extending unrealistically beyond the applicant's legitimately arguable trade area. This fact alone could have made the population and certain other statistics appear in the Board's view to be highly suspect and grossly disproportionate to the actualities in the applicant's trade area proper.

■ Moreover, Oakwood's economic study was based heavily (if not primarily) upon what was known as the "OCARTS

study," a transportation study of the Oklahoma City area taken five years earlier. The order of the Banking Board noted the study and a poll of 110 people, and stated that the correlation of the information was unsatisfactory. The Board might well have questioned the relevance of a 1965 *transportation* survey (over an area twice as large) to *banking* conditions in 1970, and in a far more restricted area. The record is silent as to what statistical control Mr. K employed for assuring that the 110 people polled constituted a fair or valid sampling of the population of the proposed area in reaching his conclusion that 48% of the inhabitants of the area would support the bank. The Banking Board may use its specialized knowledge in the evaluation of this evidence. Sebring v. Caporal, Okl., 452 P.2d 777, 780–781 (1969).

Other weaknesses also appeared in the Oakwood case. Thus, two of the proposed bank's officers indicated a lack of personal knowledge as to where the figures in the pro forma statements were drawn from, and a third backer even demonstrated a lack of familiarity with the ownership of the proposed bank.

By contrast, the Sequoyah study appears upon examination to be much more thorough in its depth and detail, more realistic in its geographical scope and current in its timeliness, convincing in its statistical control, and impressive in the technical background of those who conducted it—in short, Sequoyah clearly presented a more professional effort, as in fact specifically recognized by the protestants' own expert on cross-examination. And, of course, the more favorable personal impressions that the proposed Sequoyah backers must have made upon the Board was a matter singularly for the Board's weight and consideration. There was clearly, therefore, substantial evidence in the Sequoyah record justifying the issuance of a bank charter.

Despite the fact, therefore, that Oakwood failed where Sequoyah succeeded, we cannot say that the two outcomes are without their own individual evidentiary

justifications and rationalizations; nor can we say that the Court of Review "misapprehended or grossly misapplied" its proper standard for scrutinizing the Board's expert treatment of factual issues obviously recognized by the Legislature as calling for a high degree of expertise in the resolution thereof. We therefore find no basis for reversing either decision by the Court of Bank Review.

No. 44,340 affirmed.

No. 44,342 affirmed.

BERRY, C. J., DAVISON, V. C. J., and JACKSON, IRWIN and LAVENDER, JJ., concur.

BLACKBIRD and HODGES, JJ., dissent.