The **VILLAGE BANK** et al., Petitioners,

v.

Roy L. **SEIKEL** et al., Respondents.

No. 45492.

Supreme Court of Oklahoma.

Sept. 19, 1972.

Andrews, Mosburg, Davis, Elam, Legg & Kornfeld, by Keith McMillin, and Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, by Andrew M. Coats, Oklahoma City, for petitioners.

Jack T. Crabtree, Eric J. Groves, Buck & Crabtree, Oklahoma City, for respondents.

JACKSON, Justice.

This is a proceeding to review the decision of the Court of Bank Review reversing the order of the Banking Board which had denied an application for certificate of authority to engage in the banking business in a proposed banking service area in northwest Oklahoma City. For the reasons we will set forth, we grant certiorari and reverse the decision of the Court of Bank Review and affirm the order of the Banking Board.

This is the first opinion we have published applicable to a bank charter application filed since the effective date of the amendment to 6 O.S.1971, § 207, which provides for a changed procedure of court review of final orders of the Banking Board. Section 207 was amended effective April 27, 1970, and now provides for review by this court by certiorari. Prior to 1970, our review was by appeal. We have not yet prescribed by rule the scope of our review nor the time and manner for per-

fecting the proceeding, as provided for in subsection D of Section 207, and the petitioners herein (protestants in the proceeding before the Banking Board) followed the procedure in effect heretofore by "appealing" from the Court of Bank Review. Respondents, (applicants in the Banking Board proceeding) do not urge dismissal of the present proceeding because of any procedural defect. Both parties have presented skillful briefs which have enabled us to review the decision of the Court of Bank Review adequately and properly. The parties will be referred to as they appeared before the Banking Board.

In our review of the decision of the Court of Bank Review, we first determine what the decision of that Court was, and, second, whether that Court made a proper review of the order of the Banking Board. The decision by the Court of Bank Review was to reverse the order of the Banking Board and to direct the Board to grant the application of the applicants upon their meeting all other statutory or administrative requirements. This decision was based on the following findings by the Court of Bank Review as shown by its "journal entry of judgment:"

"This Court of Bank Review has carefully reviewed, and made an appraisement of the record in its entirety, and cannot conscientiously find that the evidence supporting the Board's decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view.

"This Court of Bank Review finds that the substantial evidence in the record does induce the conviction that there is a sufficient economic base within the community which the proposed bank seeks to serve to afford reasonable promise of such bank's successful operation; that the community's potential for economic growth is sound; and that the public need and advantage will be promoted by the granting of Applicants' request for a Charter."

**552**

■ The powers of the Court of Bank Review were not changed by the 1970 statutory amendment referred to above. That Court's powers are the same as they were when the section was first enacted in 1965. The Court of Bank Review is not a substitute for the Banking Board in the issuance of certificates to engage in the banking business. Vose v. Banking Board, Okl., 483 P.2d 731. Subsection C of Section 207 permits the Court of Bank Review to affirm or reverse an order of the Banking Board on any one of four statutory grounds. The statutory ground for reversal relied on by the Court of Bank Review in this case, as seen by the above findings, was that the order of the Board was "not supported by substantial evidence in the record." The Court of Bank Review erred in reversing the Banking Board on that ground.

■ The applicants and the protestants agree that the Banking Board's order denying the application for a charter must be affirmed if there is substantial evidence supporting it. The review to be made by the Court of Bank Review (and by this court on certiorari) is the same character of review that this court makes in an appeal from an order of the Corporation Commission whenever it reviews the evidence to determine whether there is substantial evidence to sustain a Corporation Commission order. The reviewing court is required to review, but not weigh, the evidence in an appeal of this nature. Producers Development Co. v. Magna Oil Corp., Okl., 371 P.2d 702. In Yellow Transit Co. v. State, 198 Okl. 229, 178 P.2d 83, we held:

"The determination whether there is 'substantial evidence' to support an order made by Corporation Commission does not require that the evidence be weighed, but *only that the evidence tending to support the order be considered* to determine whether it implies a quality of proof which induces the conviction that the order was proper or furnishes a substantial basis of facts from which the is-

sue tendered could be reasonably resolved." (Emphasis supplied)

■ We have reviewed all the evidence introduced at the hearing before the Banking Board, consisting of the testimony of experts in various fields, and find that the evidence supporting the Board's decision has substance and carries with it fitness to induce conviction that (1) the public need and advantage will not be promoted by the establishment of the proposed bank and that (2) conditions in the community in which the bank would transact business do not afford reasonable promise of successful operation. Where the evidence supporting the Board's decision has substance and carries with it fitness to induce conviction, there is substantial evidence to support the decision. Yellow Transit Co. v. State, supra. Under the statutes the Banking Board must ascertain to its satisfaction the affirmative of the two conditions above mentioned (together with five others) in order to approve an application for a bank charter, 6 O.S.1971, § 306, subd. F, whether there is, or is not, a protest.

■ We said, in the Yellow Transit Co. case, supra, only the evidence tending to support the order is to be considered by the reviewing court when it makes a determination as to whether there is substantial evidence tending to support the order. The Court of Bank Review stated in its finding herein that the Banking Board's order was not substantial "when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." This review by the Court of Bank Review was improper. We do not say that the Court is not to review the entire record, but it is not to consider the "evidence *opposed* to the Board's view" in making its determination of whether the order is *supported* by substantial evidence in the record unless the evidence opposing the Board's view is such as to destroy the probative value of the evidence introduced in support of the Board's order. The reviewing court is to construe

the evidence in its entirety, but it is allowed to reverse the order only when it is unable to find substantial evidence supporting the order. For an example of such a case, see Appeal of Cummings and McIntyre, Okl., 319 P.2d 602.

In the instant case the question on appeal to the Court of Bank Review was whether the finding by the Banking Board, i. e., that the population of the proposed bank service area "as shown by the census figures" was not sufficient to provide a public need for the proposed bank, was supported by substantial evidence. We hold that it was.

Protestants introduced the census records after applicant's expert witness had testified that the census records and an actual count of occupied residences and apartment units were the basis for his estimate made in May 1971 (contained in a feasibility study) that the proposed bank service area had 4,010 households and a population of 12,000 people. The proposed bank service area occupied a four and one half square mile area in the northwest part of Oklahoma City. The official census records placed into evidence by protestants covered all of the proposed bank service area and approximately one and one half square miles adjacent thereto (due to the way the census tracts were laid out). The census tracts for the *six square miles* showed that as of April 1, 1970, there were 1,712 households and the population was only 6,200 people. The reason the numbers of households and people were important was because experts for both the applicant and respondents stated that the amounts of deposits and loans would be less if the number of households and people were less than the number put in evidence by applicants. Therefore, the population was an important consideration for the Banking Board to consider in making its determination as to the need for and promise of success of the proposed bank.

■ Applicants argue that the weight given to the census figures by the Banking Board was illogical, unjustifiable, and un-

necessary. They state further that the census evidence which was sixteen months old was immaterial and irrelevant. We do not agree. In Kansas City Southern Ry. Co. v. Wood, 126 Okl. 275, 259 P. 262, we took judicial notice of the 1920 federal census showing the population of two Oklahoma towns for the purpose of deciding a case involving the population of those towns for the year ending June 30, 1925. And in Polk v. Oklahoma Alcoholic Beverage Control Bd., Okl., 420 P.2d 520, we said that the Alcoholic Beverage Control Board properly resorted to the 1960 census in determining the population of a town in November, 1963. Thus the federal census figures which were but sixteen months old were substantial evidence to be considered by the Banking Board herein and support the order of the Board.

The evidence introduced by applicants as to population in the proposed bank service area consisted of the testimony of a real estate developer who testified as follows:

"Q. Do you know about what the population of the area is now?

A. I believe, well, (pausing)

Q. (Interrupting) The total banking service area, here (indicating). Consider from the bank.

A. I think it is about 12,000."

This witness did not testify that he made or knew of any count of the number of people in the bank service area. Applicants' other witness as to population (their expert witness we referred to above) never testified concerning the population of people in the area or that he or his surveyors counted the people in the area. His testimony merely referred to a count of residences and apartment units. The inference is that he made some calculation by a formula to arrive at an estimate of a population of 12,000 persons, which estimate appears in his feasibility study introduced into evidence.

Applicants' evidence as to population in the banking service area did not destroy the probative value of the official census

records which were introduced as evidence by protestants.

The Court of Bank Review was in error in reviewing the record by apparently weighing the evidence of the parties and making the decision that it felt the Banking Board should have made. Our review of the entire record discloses that there was substantial evidence supporting the order of the Banking Board.

Certiorari granted. The judgment of the Court of Bank Review is vacated and the order of the Banking Board is affirmed.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, IRWIN, HODGES and LAVENDER, JJ., concur.