**LAKESIDE STATE BANK, an Oklahoma banking corporation, Appellant,**

**v.**

**The BANKING BOARD OF the STATE OF OKLAHOMA; R.Y. Empie Oklahoma Banking Commissioner, 1st Bank of Catoosa, Catoosa, Oklahoma, Appellee.**

**No. 61368.**

Supreme Court of Oklahoma.

June 12, 1984.

*Western Steel Erection Co. v. Gatlin,* 319 P.2d 607, 610 (Okla.1957).

Phillip McGowan, Sanders & Carpenter, Tulsa, for appellant.

J. Schaad Titus, Boone, Smith, Davis & Hurst, Tulsa, for appellee First Bank of Catoosa.

KAUGER, Justice.

The sole issue presented is whether the statute controlling issuance of branch banking certificates, 6 O.S.1983 Supp. § 501(B)(3) precludes establishment of a branch bank in a town located within twenty-five miles of the main bank if the Oklahoma Banking Board has previously issued a certificate for a branch bank to a competitor. We find that § 501(B)(3) does not operate to make the two applications mutually exclusive. The granting of a certificate of authority to 1st Bank of Catoosa, Catoosa, Oklahoma to open a branch bank in Verdigris, Oklahoma is affirmed.

On September 15, 1983, appellant, Lakeside State Bank of Oologah, Oklahoma (Lakeside), applied to the Oklahoma Banking Board (Board) for authority to open and maintain a branch bank in the town of Verdigris, Oklahoma, pursuant to 6 O.S. 1983 Supp. § 501(B)(3).[1] An application for branch banking in Verdigris was filed by the 1st Bank of Catoosa, Catoosa, Oklaho-

---

1. Branch Bank Operations are controlled by 6 O.S.1983, Supp. § 501:
 "A. Branch banking. The term "Branch" used in this section means any branch bank, branch office, branch agency, additional office, or any branch place of business, located within this state at which deposits are received, checks paid, and money lent. The term "Main Bank" as used in this section means the bank and its specific location which has been designated by the Commissioner or Comptroller of the Currency as a main office.
 B. Authorization to maintain branches—Locations: Any bank chartered under the laws of this state or by the Comptroller of the Currency may maintain and operate no more than two branches on property owned or leased by the bank as follows:

 (3) located within twenty-five (25) miles of the main bank if located in a city or town which has no state or national bank located in said city or town. Provided however, if an application for a bank charter has been filed, the Board shall give priority to the charter application.
 The Board or Comptroller of the Currency shall not grant a certificate for any branch unless it is more than three hundred thirty (330) feet from any main bank or branch bank in counties with a population of five hundred thousand (500,000) or more according to the 1980 Federal Decennial Census unless the branch is established with the irrevocable consent of such other bank. For purposes of this section the distance limitations shall be determined by measuring along a straight line down between the nearest exterior wall of the appropriate main bank building or branch building and the nearest exterior wall of the branch bank or facility.
 For the purposes of this section, the date of approval of a bank charter, the appropriate state or federal authority shall be the date of existence of such bank, branch, or facility.
 C. Certificate to maintain a branch—Notice and hearing.
 (1) From and after October 1, 1983, no state or national bank shall be permitted to maintain and operate a branch except upon certificate issued by the Board or Comptroller of the Currency.

 (3) Any banking function may be performed at the branch.

ma, (Catoosa) on September 28, 1983. The applications were set for hearing before the Board on October 26, 1983. The application of Lakeside was heard first and granted. When Catoosa's application was heard later that day, Lakeside protested issuance of a certificate to Catoosa to operate its branch bank. Nevertheless, the Board granted a certificate to Catoosa to operate a branch bank in Verdigris. Lakeside appealed.

I

DOES A BRANCH BANK FALL WITHIN THE PURVIEW OF PROHIBITION AS ESTABLISHED BY THE STATUTE CONTROLLING ISSUANCE OF BRANCH BANKING CERTIFICATES: 6 O.S.1983 Supp. § 501(B)(3)?

Lakeside contends that the Board's granting of authority allowing it to open a branch bank prevents the Board from granting branch banking privileges to any other bank. Lakeside relies upon the very statute under which its branch banking authority was awarded to argue that the Board has no authority to allow Catoosa to operate a branch bank.[2] To support this contention, Lakeside argues that under its branch banking authority it performs banking functions which meet the statutory definition of a "bank"; and that because its branch bank is a bank located in the city of Verdigris under 6 O.S.1983 Supp. § 501(B)(3) no other branch bank can be authorized.

■ This argument must fail. A reading of our banking law shows clearly that the term main bank means the primogeni-

ture bank, *and* the specific location designated by the Commissioner or Comptroller of Currency as a main office. While it is true that a branch bank may perform any banking function, its location can never be the same as that of the main office. This designation of location establishes the bank as a main bank for purposes of § 501(B)(3) and branch banking.[3] The procedure for creation of a primary bank is contained in 6 O.S.1982 Supp. § 301.[4] These requirements are separate and distinct from those permitting the establishment of a branch bank. The grant of authority to operate a branch bank under § 501(B)(3) cannot be substituted for an original certificate of authority to engage in banking. While the everyday business of a branch bank may be the same as its main bank, the branch bank cannot meet the statutory requisites governing creation of a bank. A branch bank is not a "bank" under the description contained in § 501(B)(3).

■ The Board found expressly among other pertinent findings, that: the site of the proposed bank was located within twenty-five miles of Catoosa's main office; a state or national bank was not located in Verdigris; and that because Catoosa had met all the statutory criteria, it should be granted a branch banking certificate. The expertise of an administrative agency is accorded great weight, and a presumption of validity attaches to the exercise of expertise on review. A review of the evidence contained in Catoosa's application reflects that the Board's findings of fact and conclusions of law are based upon reliable, material, probative and substantial compe-

2. See 6 O.S.1983 Supp. § 501(B)(3) note 1, supra.

3. The definition of a "main bank" is found at 6 O.S.1983 § 501(A), see Footnote 1, supra.

4. Procedures for original charter or certification are delineated in 6 O.S.1982 Supp. § 301, et seq., which provides in part:
 "§ 301. Certificate of authority.
 A. From and after the passage of the Oklahoma Banking Code no certificate of authority to engage in the banking or trust company business in this state shall be issued, and no

bank or trust company shall be permitted to engage in such business within Oklahoma except on certificate issued by the Commissioner upon approval of the Board. The issuance of such certificate shall be within the sole discretion of the Board.
B. This article contains procedures by which the Commissioner and the Board may reach informed decisions with respect to applications for authority to organize state banks and trust companies. These procedures may be used in such other situations as the Commissioner shall deem appropriate."

tent evidence [5]—the issuance of the certificate should be affirmed.

AFFIRMED.

All Justices concur.

---

**5.** *Federal Power Commission v. Florida Power & Light Co.,* 404 U.S. 453, 463, 92 S.Ct. 637, 643, 30 L.Ed.2d 600 (1972); *Tulsa Area Hospital Council v. Oral Roberts,* 626 P.2d 316, 320 (Okla.1981); *Oklahoma Water Resources Bd. v. Central Oklahoma Master Conservancy Dist.,* 464 P.2d 748, 752–53 (Okla.1969); *Oklahoma Inspection Bureau v. St. Bd. for Property & Casualty Rates,* 406 P.2d 453, 457 (Okla.1965).
It is provided by 75 O.S.1981 § 322(1)(e) that:
"§ 322. Setting aside, modifying or reversing of orders—Remand—Affirmance
(1) In any proceeding for review of an agency order, the Supreme Court or the District or Superior Court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or

reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this Act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted' but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact;"