**In the Matter of the Application of PROPOSED 1ST CITY BANK OF HEALDTON.**

**Johnny S. BOGLE, Donald B. Howard, et al., Appellants,**

**v.**

**BANKING BOARD OF the STATE OF OKLAHOMA and the Bank of Healdton, Appellees.**

**No. 63668.**

Court of Appeals of Oklahoma, Division No. 3.

Jan. 27, 1987.

---

Jerry R. Nichols, Matthew Elipinski, George P. Nelson, Tulsa, for appellants.

Keith McMillin, Kristen G. Juras, Oklahoma City, for appellee, Bank of Healdton.

Mary Beth Guard, Oklahoma City, for appellee, State Banking Bd.

HANSEN, Presiding Judge:

In 1980 the Oklahoma Legislature amended the Banking Code of 1965, 6 O.S. 1965 Supp. § 101 et seq, (Code) abolishing the Court of Bank Review as the body entrusted with appeals from orders of the

Oklahoma Banking Board (Board) and the State Banking Commissioner (Commissioner). Prior to that time any person aggrieved and directly affected by an order of the Board or Commissioner filed a Petition for Review with the Court of Bank Review.[1]

In 1982 the Legislature again amended the Code by specifically setting out the standard of review to be applied by appellate courts in considering appeals from Board or Commissioner.[2] 6 O.S.1982 Supp. § 207, still in force, states in pertinent part:

"A.  Appeals to the Supreme Court. Final orders of the Banking Board or the Commissioner may be appealed to the Supreme Court of Oklahoma by any party directly affected and showing aggrievement by the order.  A mere increase in competition resulting from the order shall not constitute aggrievement."

B.....

C.....

D.  Standard of review.  The Court shall give great weight to findings made and inferences drawn by the Board or Commissioner on questions of fact.  The Court may affirm the decision or remand the case for further proceedings.  Additionally, the Court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the findings, inferences or conclusions are not supported by substantial evidence in the record.

Under former law[3], when persons made application to the Board for a certificate of authority to establish a bank, the Commissioner merely investigated the matter for the Board.  After he filed his report, the Board held a formal fact finding hearing.

All evidence and testimony in support of and in opposition to the issuance of the charter was presented to the Board.  The Board then issued its order denying or granting the charter supported by findings of fact and conclusions of law.  This order was subject to appellate review by the Supreme Court.

The 1982 amendments added §§ 307.1—313 to the Code.  Section 308 provided the initial evidentiary hearing on charter applications would be before the Commissioner as fact finder.  This section remains unchanged.  Section 309(D) provided Commissioner should issue findings of fact and conclusions of law based on the material contained in the record.  Section 309(E) which also remains unchanged at this date provided:

"Objections:  Board Hearing.  Written objections to the Commissioner's findings and conclusions, or procedural objections, may be submitted to the Commissioner by participants within twenty (20) days after the issuance of the Commissioner's findings and conclusions.  At the conclusion of the twenty (20) day objection period the Commissioner shall schedule a date for consideration of the application by the Banking Board and for presentation of oral arguments by participants in support of or in opposition to objections previously submitted."

6 O.S. 1982 Supp. § 310 addressed hearings before Board.  It provided:

"A.  Criteria.  The Board, at its discretion, may give consideration to the following in arriving at its decision:

---

**1.** 6 O.S.1965 Supp. § 207 provided Court of Bank Review could modify or reverse the appealed order if it found;

"(1) was issued pursuant to an unconstitutional statutory provision; or
(2) was in excess of statutory authority; or
(3) was issued upon unlawful procedure; or
(4) is not supported by substantial evidence in the record."

The decision of the Court of Bank Review was subject to appeal as in other civil cases.

In 1970 the Code was amended to provide: "The decision of the Court of Bank Review shall set forth in writing the legal reasons for the conclusions reached...."

That amendment further made review in the Supreme Court by certiorari to the Court of Bank Review only.

**2.** Section 207 and Part III(f) of the Rules of Civil Appellate Procedure. 12 O.S. 1981 Ch. 15 App. 2, both refer to appeals from final orders of *Board and Commissioner.* Although we assume some orders of Commissioner are final and appealable directly to Supreme Court, we decline to address this dichotomy.

**3.** *See* 6 O.S.1981 §§ 306, 307 repealed by Laws 1982, c. 204 § 17.

1. The character, financial responsibility and business experience of the organizers and proposed directors;

2. The adequacy of the existing banking facilities in the community;

3. The economic and competitive conditions in the community;

4. The likelihood of successful operation of the proposed institution; and

5. The adequacy of initial capital, proposed earnings and deposit prospects of the proposed institution."

Section 311 also enacted in 1982 made decisions of the Board appealable to the Supreme Court "in accordance with provisions of Section 207 of this title."

The next year, in 1983, the Legislature again amended the Code by deleting these standards from § 309 and adding them to § 310, thus transferring verbatim the authority to consider the standards from Board to Commissioner. (See 6 O.S. 1983 Supp. § 309(D)). Section 310(A) above was repealed and the following was substituted in its place:

"A. Banking Board hearing. In its consideration of the application, the Board shall review the record of the proceedings. The Board shall hear oral argument in support of and in opposition to objections, if any, and shall adopt, reject or remand for further investigation the findings, conclusions and recommendation of the presiding officer. *The Board shall adopt the presiding officer's findings, conclusions and recommendation unless it finds the presiding officer's findings, conclusions and recommendation are not supported by substantial evidence in the record.*" (Emphasis supplied.)

This is an appeal from an order of Board denying Proponents' application for authority to organize a new bank in Healdton. This is the first such appeal since the 1983 amendments drastically shifted the responsibilities of Commissioner and Board. The effect of this shift on the standard of review by both the Board and this Court is the subject of this appeal.

Although the standard of review by Board set out in § 310(A) and the standard of appellate review in § 207 seem quite clear, their application to the facts and circumstances of this case is somewhat clouded.

In this case Commissioner heard the evidence presented by Proponents and recommended to Board that their application be approved.

Appellee, Bank of Healdton, filed objections and asked Board to reject Commissioner's conclusions and deny the charter. Upon review of the record and hearing as provided in § 310, Board found Commissioner's findings as to the adequacy of the service area and the financial projections were not supported by substantial evidence and concluded:

"1. The Board has jurisdiction of this matter under 6 O.S. (1981) § 310, and a quorum was present at the hearing.

2. There was not substantial evidence to support the Commissioner's conclusion that the economic and competitive conditions in the community are conducive to a new bank.

3. There was not substantial evidence to support the Commissioner's conclusion that there is a likelihood of successful operation of the proposed institution."

Proponents of the charter (Appellants) appeal this order arguing the discretionary powers Board formally enjoyed under the earlier statutory scheme are now vested in Commissioner. They argue under the current statute Board is mandated to adopt the findings of Commissioner. They submit Board is tied to the Commissioner's findings, conclusions and recommendations unless they are not based on substantial evidence in the record. They further argue it is not Board's function to substitute its judgment for that of the Commissioner citing *Banking Board of State of Oklahoma v. Wilkerson,* 642 P.2d 1141 (Okla.1982).

Appellees counter by submitting 6 O.S. 1983 Supp. § 301 still places issuance of a certificate of authority within the sole discretion of the Board. Section 301 provides:

"A. From and after the passage of the Oklahoma Banking Code no certificate of

authority to engage in the banking or trust company business in this state shall be issued, and no bank or trust company shall be permitted to engage in such business within Oklahoma except on certificate issued by the Commissioner upon approval of the Board. *The issuance of such certificate shall be within the sole discretion of the Board.* (Emphasis supplied.)

B. . . . ."

They argue Commissioner is merely the fact finding agent of Board. As such he did not issue an order in this case, only recommendations.

We agree with Appellants the standard of review by Board set out in § 310(A) is quite clear and that *Wilkerson* controls. Board should adopt Commissioner's recommendation unless it finds it is not supported by substantial evidence in the record. This Court's standard of review in the present situation is less than clear.

■ Section 207(D) states: "The (appellate) Court shall give great weight to findings made and inferences drawn by the Board or Commissioner on questions of fact." In the situation herein we have opposing findings made and inferences drawn by the Board and the Commissioner on questions of fact. Additionally, under this section, we may "reverse or modify the decision if substantial rights of the Appellant have been prejudiced because the findings, inferences or conclusions are not supported by substantial evidence in the record." Does this mean the findings of the Commissioner or the findings of the Board? It is conceivable in some close situations that both the order of the Board and the recommendations of the Commissioner would be supported by substantial evidence even though they came to opposite conclusions. What then? How do we apply *Wilkerson* now that Board's authority has been modified?

We decline to adopt the narrow review standard imposed by the Supreme Court in

Workers' Compensation cases and review only Board's decision.[4] We hold the appellate review must include a decision of whether Board properly exercised its standard of review of Commissioner's recommendations under § 310. This holding does not conflict with the discretionary power vested in Board by § 207. Although we agree Commissioner's powers are enlarged and his responsibility greatened by the recent amendments, Board is still charged with the final decision of whether to grant a charter. However, if Commissioner's report was supported by substantial evidence, then Board may have abused its discretion in failing to adopt it.

■ Appellants argue the word "shall" in § 310(A) lessens Board's discretion to reverse Commissioner's recommendation. *Citicorp Savings and Trust Company v. The Banking Board of the State of Oklahoma*, 704 P.2d 490 (Okla.1985) construes other sections of the most recently amended code and addresses a different issue but gives us guidance in construing § 310(A). That decision gave directory construction rather than mandatory construction to the word "shall" in the Code. Mandatory construction is conditioned upon a finding there be no contrary legislative intent. *Citicorp* held "obviously the last line in § 301, 'the issuance of such certificate shall be within the sole discretion of the Board' evidences an intent contrary to the usual meaning of 'shall' (in § 313)". It further states "we are compelled to conclude that had the Legislature intended § 313[5] to be mandatory it would have either (1) not enacted the last sentence of § 301 in the first place, or (2) stricken it when the section was amended in 1982. Since it did neither we find the requisite 'contrary intent' in a 'strongly persuasive context' that allows for a directory rather a mandatory reading of 'shall' ".

Under this holding Board is still granted discretion in denying or granting a charter even in face of "shall" in § 310(A). The

---

4. *Parks v. Norman Municipal Hospital,* 684 P.2d 548 (Okla.1984), holds appellate review is addressed only to decision of *en banc* court.

5. § 313 deals with the discretion of Board to deny an application if its requirements have been met.

Legislature did not remove the charter granting power from Board and place it solely in the hands of Commissioner as argued by Appellants. Thus Supreme Court decisions prior to the recent code amendments are guidance as to our standard of review of Board's order. These cases set the framework for our appellate review. We do not find the shift of fact finding responsibilities obliterates their holdings.

■ *In re Bank of Bixsby v. Banking Board*, 524 P.2d 14 (Okla.1974) was decided before the Court of Bank Review was abolished. The Court quoted prior decisions [6] and held in Oklahoma the Legislature has charged the Court of Bank Review (Board) and not this Court with the normal and primary responsibility of reviewing Banking Board's (Commissioner's) orders. Whether on the record as a whole there is substantial evidence to support the findings of the Banking Board (Commissioner) is a question the Legislature has placed in the keeping of the Court of Bank Review (Board).

■ Under the present statutory scheme, Board's review of the Commissioner's recommendations could be considered equivalent to the now defunct Court of Bank Review's review of Board's recommendations. Similarily, Commissioner has stepped into the shoes of Board under prior law. This Court will intervene only in what ought to be the rare instances when the standard of substantial evidence appears to have been misapprehended or grossly misapplied by Board.

■ This view was restated in *Citizens Security Bank & Trust v. Banking Board of State of Oklahoma*, 627 P.2d 423 (Okla. 1981), wherein Justice Opala held judicial review of the Board's decision is governed by the substantial evidence standard. He concluded Board is also subject to reversal when its decision rests on misapprehended or grossly misapplied legal criteria. Today this standard should be applied to Board's review of Commissioner's recommendations. Also, however if findings of both Commissioner and Board are supported by substantial evidence, unless Board misapplied its standard of review, Commissioner's recommendations must give way to Board's final decision.

■ Our review is thus two pronged, yet intertwined. (1) Is Board's decision supported by substantial evidence in the record? (2) Did Board abuse its discretion by grossly misapplying the substantial evidence test?

Was the Board's decision herein based on reliable material probative and substantial competent evidence? Expertise of an administrative agency is accorded great weight and the presumption of its validity attaches to the exercise of this expertise on review [7]. Our review of the record to determine whether the Board's order was supported by substantial evidence must take into account not only the evidence which supports the Board's decision but also that which contradicts the view taken by the Board and supports Commissioner's recommendation.[8] We will not rubber stamp the orders of either the Banking Board or the Commissioner nor will we substitute our judgment for that of the Board [9].

We now turn to a consideration of the record of the actual merits of establishing the proposed new bank to determine if the Board grossly misapplied the substantial evidence rule in making findings contrary to those of the Commissioner and thus abused its discretion.[10]

6. *Vose v. Banking Board*, 483 P.2d 731 (Okla. 1971); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

7. *Lakeside State Bank v. Banking Board of State of Oklahoma*, 682 P.2d 232 (Okla.1984).

8. *Citizens Security Bank & Trust Banking Board of State of Oklahoma*, (Okla.1981); *Brown v. Banking Board*, 512 P.2d 166 (Okla.1973).

9. *Brown v. Banking Board*, 579 P.2d 1267 (Okla. 1978).

10. *Bank of Commerce, Stillwell, Oklahoma v. Banking Board*, 534 P.2d 923 (Okla.1975).

Substantial evidence has been clearly defined by the Oklahoma Supreme Court. It means something more than a scintilla of evidence and means evidence that possesses something of substance and of relevant consequence such as carries with it fitness to induce conviction and is such evidence that reasonable men may fairly differ as to whether it establishes a case.[11] With this in mind we have reviewed the whole of the evidence found in the record supporting both Commissioner's finding and Board's findings. Based on this review we affirm Board's decision to deny the application. Our decision reflects consideration of the substantiality of the evidence taking into account that which fairly detracted from its weight.[12]

■ Board's order focused on two of the four factors which control the issuance of a certificate of authority, the economic and competitive conditions in the community and the likelihood of successful operation of the proposed institution. It found Commissioner's findings and conclusions were lacking in support by substantial evidence in two areas, adequacy of the primary service area and financial projections.[13]

Board considered the primary service area (PSA) to be too large, extending into the service area of banks in other towns.[14] Appellants' estimate of the amount of business it would receive from this extended PSA is thus unrealistic.

Appellants submitted a report made by an investigator for Board who had visited with people in Healdton. She stated the general consensus was that another bank would be good for the community. However a survey reflecting who was interviewed, the number of people and the basis for their opinion was not offered.

Appellants' expert, Dr. Self, testified as to his opinion on the success of the bank. Many of his facts were inaccurate, and his figures outdated.[15]

Appellants failed to present any evidence establishing the appropriateness of their use of the large 200 square mile PSA. Appellants failed to present a survey of the residents of the area to support their loan and deposit projections. Although they asserted the community was dissatisfied with the existing banking facilities there was no survey in support of this statement. Contrary to Appellants' argument the population of Healdton was increasing, it actually had only grown 374 persons between 1970 and 1980.

A central issue is whether the economy would support another bank. Although small grain farming is present in the area, there was no evidence it played a significant role in the economy. Oil and gas drilling and more particularly oil and gas servicing are the main industries. Testimony and current information indicated the oil business had significantly declined, affecting the economy of the area.

In contrast to the projections by Appellants, Appellees produced evidence there had been no significant recent population growth in the PSA. Sales tax receipts were actually down from 1981. School enrollment had not increased significantly. Unemployment is high.

**11.** *State ex rel Cartwright v. Oklahoma Natural Gas Company,* 640 P.2d 1341 (Okla.1982).

**12.** *See El Paso Natural Gas Company v. Corporation Commission of State of Oklahoma,* 640 P.2d 1336 (Okla.1982).

**13.** Other elements set out in § 309(D) are not disputed on appeal. The character, financial responsibility and business experience of the organizers and proposed directors was above reproach. In addition there was no controversy as to the adequacy of the initial capital nor the adequacy of the proposed site.

**14.** The same PSA was considered unfavorable to Appellants' previous application to establish a National Bank. Appellants did not change the PSA in the present application for a state charter.

**15.** For example: He stated the Santa Fe Railroad went through Healdton when in fact it had not been through there for 5 or 6 years; he thought agriculture was a primary contributor to the economy when in fact it was minimal; he thought Appellee Healdton Bank should have at least 100 parking places, more than four times the number of its employees; he did not know the number of employees of business in Healdton or how many of them actually lived in Healdton.

There was contradictory testimony as to the number of Healdton residents who banked elsewhere. Although Appellants, who were officers and directors of the Bank of Lone Grove, Oklahoma, estimated 15% of its customers came from Healdton, they did not present any statistics in support of this statement. Based on this estimate, Appellants anticipated a recapture of deposits in the Healdton area in the new bank. This is directly contradictory to an actual survey done by Appellees indicating more Healdton residents already bank in Healdton than one would anticipate from a study of other surrounding towns. It showed 66% of Healdton residents banked in Healdton, and only 3% banked at Lone Grove. By comparison only 61% of Wilson residents banked at Wilson and only 62% of Velma residents utilized the Velma bank. The same survey showed customers of Healdton bank were generally satisfied with the service they received.

Appellees' evidence showed there were many vacant businesses along main street. In addition many of the employers cited by Appellants as supporting the local economy had lost a substantial number of employees.

Appellants' proformas were examined by an accountant on behalf of Appellees. He testified the proformas had an insufficient loan loss projection. They made no adjustment for nonperforming loans. In addition they did not account for projected interest income.

■ Inherent in this holding, Board's findings were supported by substantial evidence, is the finding that it did not misapprehend or grossly misapply legal criteria in finding Commissioner's recommendation was not supported by substantial evidence. As may this Court, Board could also take into account whatever in the record fairly detracted from the weight of evidence and support of its findings.

■ The Comptroller of the currency had earlier denied Appellants' application for a National Bank charter despite the fact Appellees herein did not protest the application. Although certainly not controlling in this case, it was not error for Board to consider the denial even though Appellees presented no evidence regarding similarities or differences between the two applications. Appellants had ample opportunity to argue the differences.

Board did not abuse its discretion in finding Commissioner's recommendation was not supported by substantial evidence and in denying the charter.

■ Lastly, Appellants argue Commissioner's acceptance of and Board's reliance on evidence which was untimely submitted by Appellees was reversible error. We do not agree. Upon receipt of the allegedly dilatory surveys the attorney for Appellees called attorney for Appellants and gave the information to them. Appellants do not show how this late filing caused them substantial prejudice. As in *Banking Board of the State of Oklahoma v. Wilkerson, supra* under such circumstances the reversal of Board's decision because of a technical violation does not seem reasonable or mandated.

Accordingly Board's decision to deny a state bank charter to Appellants is AFFIRMED.

HUNTER and BAILEY, JJ., concur.